**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3480-17T4

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

RASHID WALKER,

     Defendant-Appellant.

_____

          Submitted March 28, 2019 – Decided April 11, 2019

          Before Judges Simonelli and Whipple.

          On appeal from Superior Court of New Jersey, Law Division, Passaic County, Indictment No. 02-06-0824.

          Rashid Walker, appellant pro se.

          Camelia M. Valdes, Passaic County Prosecutor, attorney for respondent (Christopher W. Hsieh, Chief Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Defendant Rashid Walker appeals from the January 23, 2018 Law Division order, which denied his second petition for post-conviction relief (PCR) without an evidentiary hearing. We affirm.

The facts established in defendant's two trials were set out at length in our opinion on direct appeal, State v. Walker, Nos. A-5769-03 and A-5952-04 (App. Div. May 9, 2008). We also incorporate the facts established in our opinion affirming the denial of defendant's first PCR petition, State v. Walker, No. A-2563-12 (App. Div. June 23, 2015). The following facts inform our review.

In June 2002, a grand jury indicted defendant and his co-defendant, James Walker (James), for murder, N.J.S.A. 2C:11-3(a)(1) and (2) and N.J.S.A. 2C:2-6 (count one); possession of a handgun for an unlawful purpose, N.J.S.A. 2C:39-4(a) (count two); armed robbery, N.J.S.A. 2C:15-1 and N.J.S.A. 2C:2-6 (count three); felony murder, N.J.S.A. 2C:11-3(a)(3) and N.J.S.A. 2C:2-6 (count four); certain persons not permitted to have weapons, N.J.S.A. 2C:39-7 (count six); unlawful possession of a .22 caliber handgun, N.J.S.A. 2C:39-5(b) (count seven); receiving stolen property, a Colt .380 firearm and a Colt .45 handgun respectively, N.J.S.A. 2C:20-7 and N.J.S.A. 2C:20-2(a) (counts eight and nine); unlawful possession of a Colt .45 firearm, a Colt .380 handgun, and a .45 caliber

automatic handgun, N.J.S.A. 2C:39-5(b) (counts ten, eleven and twelve); possession of a controlled dangerous substance, N.J.S.A. 2C:35-10(a)(1) (count thirteen); possession of a controlled dangerous substance with intent to distribute, N.J.S.A. 2C:35-5(a)(1) and (b)(3) (count fourteen); and possession of a controlled dangerous substance with intent to distribute within 1,000 feet of school property, N.J.S.A. 2C:35-7 and N.J.S.A. 2C:35-5(a) (count fifteen). The first four counts allege crimes related to a shooting on February 18, 2002. The balance, resulting from subsequent searches of two apartments, were alleged to have occurred on February 28, 2002.

The indictment was severed so that James could testify on defendant's behalf. However, James subsequently pled guilty and did not testify. Rather, the prosecutor read into evidence James' statement to the police, wherein James stated that he and Dayron Johnson shot the victim in an attempt to rob him, and James fled alone to an apartment. James also stated he saw defendant for the first time that night when defendant arrived twenty minutes later. Although James exculpated defendant of the shooting in his statement, the statement also indicated that James discussed the shooting, in general terms, with defendant, and may have been deemed to implicate defendant with respect to the weapons

3

the police found after the shooting. Defendant testified that he was not involved in the shooting.

The jury found defendant guilty of possession of a handgun for an unlawful purpose (count two), unlawful possession of a CDM .22 caliber and a Colt .380 caliber handgun (counts seven and eleven), and receiving stolen property (the Colt .380 handgun) (count eight). However, the jury was unable to reach a verdict on the other counts and a hung jury was declared on those counts. The jury was thereupon instructed on count six (certain persons not permitted to have weapons), and found defendant guilty of that charge.

In 2004, defendant was retried on the remaining counts. The trial court barred the State from introducing James' statement under Crawford v. Washington, 541 U.S. 36 (2004), because James was unavailable, as he refused to testify despite a grant of immunity and the trial court holding him in contempt and imprisoning him for six months, and there was no prior opportunity for cross-examination. In addition, the court sustained defendant's objection to the introduction of James' statement in the State's case but did not bar defendant from introducing the statement in his case. Defendant did not seek to introduce James' statement even though the trial court would have permitted it. Defendant

A-3480-17T4

agreed on the record with trial counsel's strategic decisions not to call James or admit his statement.

The State also attempted to call Dwight Jackson as a witness. Jackson had given a videotaped statement to the police, inculpating defendant. Upon receipt of Jackson's statement prior to the re-trial, trial counsel requested the State disclose any cooperation agreement with Jackson and argued the State committed a Brady[1] violation with respect to its late production of the statement. The trial court found no Brady violation had occurred. At trial, defendant successfully objected, and the court excluded Jackson's testimony on hearsay grounds. Defendant did not testify.

The jury found defendant guilty of murder (count one), armed robbery (count three), felony murder (count four), receiving stolen property (the Colt .45 handgun) (count nine), and unlawful possession of a weapon (the Colt .45) (count ten). The jury found defendant not guilty of unlawful possession of another .45 caliber handgun (count twelve).

Defendant appealed his conviction and sentence. We affirmed the conviction, but remanded for resentencing, which resulted in an aggregate sixty-

---

[1] Brady v. Maryland, 373 U.S. 83 (1963).

year term of imprisonment with an eighty-five percent period of parole ineligibility pursuant to the No Early Release Act, N.J.S.A. 2C:43-7.2. State v. Walker, Nos. A-5769-03 and A-5952-04 (slip op. at 46-47). The Supreme Court denied certification. State v. Walker, 196 N.J. 466 (2008). We later upheld the resentencing. State v. Walker, No. A-0788-08 (App. Div. Mar. 11, 2010).

Defendant filed a PCR petition arguing, in part, that trial counsel was ineffective for failing to call James as an exculpatory witness or use his exculpatory statement to the police. Defendant also filed a motion for a new trial based on newly discovered evidence, namely the availability of James to provide exculpatory testimony.

The PCR judge held an evidentiary hearing, at which trial counsel and James testified. Trial counsel explained that she chose not to call James to testify or use his statement because it would defeat her trial strategy. Trial counsel testified she had interviewed James and found he was not likeable, and that his statement to the police "was ridiculous on so many things that were easily disprovable by the [S]tate." State v. Walker, No. A-2563-12 (slip op. at 10) (alteration in original).

James testified that "under no circumstances [would he have] answer[ed] any questions" at trial. Id. at 11. He confirmed that he refused to testify even

when granted immunity and held in contempt. Ibid. The PCR court observed James under questioning and found he likely would not have fared well under cross-examination and would have harmed defendant's case. Id. at 10.

On December 17, 2012, the PCR judge denied the petition. Defendant appealed, and we affirmed. Id. at 17. We found that defendant agreed on the second trial record with trial counsel's strategic decision not to call James or admit his statement, and James testified at the PCR hearing that he would not have testified under any circumstances. Id. at 10-11. We concluded trial counsel was not ineffective in her strategic decision. Id. at 11.

We also concluded that defendant was not entitled to a new trial based on newly discovered evidence. Id. at 12. We found that James' proposed testimony essentially repeated his statement to police, and thus his exculpatory information was not discovered after trial or undiscoverable beforehand. Id. at 11. We noted that "defendant's trial had been severed to allow James to testify, and James had been immunized to remove any risk of self-incrimination and to make James available to testify." Ibid. "[W]e questioned whether James' testimony is properly regarded as newly-discovered, particularly as the trial court found that, in refusing to testify, James was acting in concert with defendant." Id. at 11-12. We also found that defendant failed to show James' testimony probably would

have changed the jury's verdict. Id. at 12. The Supreme Court denied certification. State v. Walker, 224 N.J. 246 (2016).

On March 9, 2017, defendant filed a second PCR petition, seeking a new trial based on a Brady violation. Defendant argued the State failed to disclose that it had entered into a cooperation agreement with Jackson in 2002, and the prosecutor improperly induced Jackson to provide inculpatory information against defendant and withheld Jackson's exculpatory information. Defendant relied on Jackson's January 17, 2017 certification, wherein Jackson stated he had a cooperation agreement with the prosecutor with respect to a drug offense. The transcript of Jackson's plea hearing on May 24, 2002, indicates he pled guilty to a drug offense that occurred on April 23, 2001, and agreed to cooperate in prosecuting narcotic offenses. Jackson also stated he told the prosecutor in November 2003 and July 2004 that Johnson told him James and Johnson shot the victim, but he nonetheless agreed to give a videotaped statement inculpating defendant and testify at trial in exchange for a sentence of probation on his drug charge.

Defendant also sought a new trial based on newly discovered evidence, namely Johnson's August 1, 2006 plea of guilty to the robbery of the victim; Jackson's January 17, 2017 certification; and James' availability to testify.

Defendant relied on James' April 29, 2010 certification, wherein James confirmed he was unavailable to testify at trial, and stated that if called to testify he would attest to facts similar to those in his statement to the police, including that he and Johnson were responsible for committing the crime.

The PCR judge found the petition was time barred under Rule 3:22-12(a)(2), and defendant did not assert any claim which would come under subsections (A), (B) or (C).  The judge also found the petition was procedurally barred under Rule 3:22-4(b), as it was untimely under Rule 3:22-12(a)(2) and defendant did not allege any claim which would come under Rule 3:22-4(b)(2)(A), (B) or (C).  This appeal followed.

On appeal, defendant raises the following contentions:

POINT-I

> THE PCR COURT ERRED IN ITS DETERMINATION THAT THE DEFENDANT DID NOT SATISFY THE REQUIREMENTS OF [RULE] 3:22-12(B).

POINT-II

> PCR COURT ERRED WHEN IT SUMMARILY DENIED [DEFENDANT'S] MOTION FOR NEW TRIAL BASED ON VIOLATION OF BRADY V. MARYLAND, [373 U.S. 83 (1963)]; THE PROSECUTOR'S TACTIC ROSE TO THE LEVEL OF MISCONDUCT IN SUCH A WAY THAT IT VIOLATED PETITIONER'S FUNDAMENTAL

RIGHT TO DUE PROCESS AND A FAIR TRIAL. [U.S. CONST., AMENDS. V, VI, XIV; N.J. CONST., ART. I, ¶ 10].

1.) Prosecutor Keith Hoffman failed to disclose the Passaic County Prosecutor's Office entered into a unilateral cooperation agreement with Dwight Jackson, and failed to disclose that Jackson provided exculpatory information that corroborated [defendant's] defense during his first trial.

2.) Prosecutor Keith Hoffman withheld information concerning inducements offered to Dwight Jackson prior to taking the statement wherein he changed the exculpatory information he initially provided to inculpatory information in order to obtain the benefit of the inducements and the unilateral cooperation agreement.

3.) Prosecutor Keith Hoffman [f]ailed to disclose material that was favorable to [defendant's] Motion for New Trial Based on Newly Discovered Evidence.

POINT III

MOTION FOR NEW TRIAL BASED ON NEWLY DISCOVERED EVIDENCE PURSUANT TO [RULE] 3:20-2.

POINT IV

THE [DEFENDANT] IS ENTITLED TO AN EVIDENTIARY HEARING, PURSUANT TO [RULE] 3:22-10 BECAUSE HE HAS PRESENTED A PRIMA FACIE CLAIM OF A VIOLATION OF BRADY V. MARYLAND, AS WELL AS MOTION FOR NEW TRIAL BASED ON NEWLY DISCOVERED EVIDENCE.

A-3480-17T4

The mere raising of a claim for PCR does not entitle the defendant to an evidentiary hearing. State v. Cummings, 321 N.J. Super. 154, 170 (App. Div. 1999). Rather, trial courts should grant evidentiary hearings and make a determination on the merits only if the defendant has presented a prima facie claim of ineffective assistance, material issues of disputed fact lie outside the record, and resolution of the issues necessitates a hearing. R. 3:22-10(b); State v. Porter, 216 N.J. 343, 354-55 (2013). We review a judge's decision to deny a PCR petition without an evidentiary hearing for abuse of discretion. State v. Brewster, 429 N.J. Super. 387, 401 (App. Div. 2013). We discern no abuse of discretion here.

A defendant must file a first PCR petition within five years after the entry of the judgment of conviction. R. 3:22-12(a)(1). Rule 3:22-12(a)(2)(B) provides, in pertinent part, that a defendant must file a second PCR petition within one year of "the date on which the factual predicate for the relief sought was discovered, if that factual predicate could not have been discovered earlier through the exercise of reasonable diligence." Rule 3:22-4(b) provides, in pertinent part, that a second PCR petition is procedurally barred unless:

> (1) it is timely under [Rule] 3:22-12(a)(2); and (2) it alleges on its face . . . that the factual predicate for the relief sought could not have been discovered earlier through the exercise of reasonable diligence, and the

> facts underlying the ground for relief, if proven and viewed in light of the evidence as a whole, would raise a reasonable probability that the relief sought would be granted[.]

These time and procedural rules must be viewed in light of their dual purpose: "to ensure that the passage of time does not prejudice the State's retrial of a defendant" and to respect the need for finality. State v. DiFrisco, 187 N.J. 156, 166-67 (2006).

"[A] PCR judge has an independent, non-delegable duty to question the timeliness of [a PCR] petition, and to require that defendant submit competent evidence to satisfy the standards for relaxing the rule's time restrictions pursuant to Rule 3:22-12." State v. Brown, 455 N.J. Super. 460, 470 (App. Div. 2018). "Absent sufficient competent evidence to satisfy [the standards for relaxing the time restrictions], the court does not have the authority to review the merits of the claim." Ibid.

The record before us does not show that defendant challenged the timeliness issue before the PCR judge. More importantly, the record contains no competent evidence as to the date defendant discovered the newly discovered evidence to satisfy the standards for relaxing the time restrictions under Rule 3:22-12(a)(2). Defendant provides nothing more than bald assertions in his merits brief as to when he allegedly discovered the newly discovered evidence.

In any event, the purported exculpatory evidence was not newly discovered evidence. Our Supreme Court has held:

> Evidence is newly discovered and sufficient to warrant the grant of a new trial when it is "(1) material to the issue and not merely cumulative or impeaching or contradictory; (2) discovered since the trial and not discoverable by reasonable diligence beforehand; and (3) of the sort that would probably change the jury's verdict if a new trial were granted."
>
> [State v. Nash, 212 N.J. 518, 549 (2013) (quoting State v. Carter, 85 N.J. 300, 314 (1981)).]

When evaluating a defendant's proffer of newly discovered evidence, the court must bear in mind that "[a] jury verdict rendered after a fair trial should not be disturbed except for the clearest of reasons." State v. Ways, 180 N.J. 171, 187 (2004); see also State v. Conway, 193 N.J. Super. 133, 171 (App. Div. 1984) (holding that "[a] motion for a new trial upon the ground of newly discovered evidence is not favored and should be granted with caution by a trial court since it disrupts the judicial process"). Thus, "[n]ewly discovered evidence must be reviewed with a certain degree of circumspection to ensure that . . . if credible and material, [it] is of sufficient weight that it would probably alter the outcome of the verdict in a new trial." Ways, 180 N.J. at 187-88.

Defendant has not satisfied the test for granting a new trial based on newly discovered evidence. Defendant knew about Jackson and his videotaped

statement in 2004, before the second trial. Upon receiving the statement, trial counsel requested disclosure of any cooperation agreement with Jackson and asserted a Brady violation. In addition, during the second trial, defendant successfully objected, and the court excluded Jackson's testimony on hearsay grounds. Thus, the factual predicate for the relief sought relating to Jackson could have been discovered earlier through the exercise of reasonable diligence, and defendant's inclusion of this claim in a second PCR petition was untimely under Rule 3:22-12(a)(2), and procedurally barred under Rule 3:22-4(b).

In any event, defendant cannot show this evidence would probably alter the outcome of the verdict in a new trial. Jackson did not certify that he witnessed the shooting, or saw or spoke to the shooter. Rather, his exculpatory information was based on what Johnson allegedly told him about the shooting and who shot the victim. Thus, Jackson's testimony would have been excluded at a new trial on hearsay grounds.

Defendant also knew about Johnson since the first trial. At the first trial, the prosecutor read into evidence James' statement to the police, wherein James stated that he and Johnson shot the victim in an attempt to rob him. On August 1, 2006, Johnson pled guilty to robbing the victim, and defendant could have discovered his guilty plea at that time with reasonable diligence. Thus, the

factual predicate for the relief sought relating to Johnson could have been discovered earlier through the exercise of reasonable diligence, and defendant's inclusion of this claim in a second PCR petition is untimely under Rule 3:22-12(a)(2), and procedurally barred under Rule 3:22-4(b).  In addition, defendant does not explain how Johnson's guilty plea would have probably changed the jury's verdict if a new trial were granted.

Lastly, the record does not support defendant's argument that James' availability to testify was newly discovered evidence.  To the contrary, the record confirms that James was unavailable to testify, as he refused to testify even with the grant of immunity.  Further, we found that James' exculpatory information was not discovered after trial and was not undiscoverable beforehand, and defendant failed to show James' testimony probably would have changed the jury's verdict.  State v. Walker, No. A-2563-12 (slip op. at 12).  Thus, defendant's inclusion of this claim in a second PCR petition is untimely under Rule 3:22-12(a)(2), and procedurally barred under Rule 3:22-4(b).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3480-17T4